IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| JARIEL A. PITTMAN, | ) | |
| --- | --- | --- |
| Petitioner, | ) | 8:15CV336 |
| v. | ) | |
| SCOTT R. FRAKES, Director, Nebraska Department of Corrections, | ) | MEMORANDUM AND ORDER |
| Respondent. | ) | |

Jariel A. Pittman was convicted by the district court for Lancaster County of being in possession of a controlled substance and being a habitual criminal. As a result of his convictions, Pittman was sentenced to 10 to 20 years' imprisonment. He has filed a petition for writ of habeas corpus in this court. Briefly, and for the reasons set forth below, I deny the petition and dismiss it with prejudice.

## *BACKGROUND*

The State filed a criminal complaint charging Pittman with being in possession of a controlled substance and with being a habitual criminal. There was no question about his guilt–the cops caught him red-handed trying to flush drugs down the toilet while also possessing dope in his pocket. The only question was whether the evidence obtained as a result of the search warrant should have been suppressed because the warrant should not have been issued.

After a motion to suppress was denied, and a short trial was held where Pittman did not dispute the facts but merely renewed his objection to the contraband, he took a direct appeal. In that appeal, he challenged, among other things, the failure to suppress the evidence.

In the direct appeal, Pittman asserted that: (1) that the affidavit failed to include information about where the vehicle followed by officers on February 23 traveled to before stopping at 1609 D Street; (2) that the affidavit did not indicate that the affiant was not present during the surveillance conducted on March 7 and did not state that during this surveillance none of the individuals who visited 1609 D Street, apartment No. 10, were stopped and questioned; (3) that the affidavit failed to indicate that further surveillance was done at 1609 D Street on March 8, but there was no evidence of any drug activity observed; and (4) that the affiant dated the affidavit "March 9, 2012," but there was information in the affidavit that occurred after that date.

The Nebraska Court of Appeals in a fully reasoned decision affirmed the conviction and sentence and rejected Pittman's Fourth Amendment claim that there were material misrepresentations and omissions in the affidavit in support of the search warrant. *State v. Pittman*, No. A-13-072, 2013 WL 6068894 (Neb. Ct. App. Nov. 19, 2013), review denied (Dec 18, 2013).

The Nebraska Court of Appeals accurately described in detail the circumstances surrounding the search in relation to the affidavit and warrant upon which the search was based. The court wrote:

> The possession of a controlled substance charge against Pittman was based on evidence seized, pursuant to a search warrant, during a March 20, 2012, search of 1609 D Street, apartment No. 10. During the execution of the search warrant, police officers searched Pittman and found 5.21 grams of cocaine in his pants pocket.
>
> The affidavit in support of the search warrant to search 1609 D Street, apartment No. 10, was signed by Lincoln Police Investigator Timothy Cronin. Investigator Cronin has been a Lincoln police officer for approximately 12 years, and in March 2012, he was assigned to the Lincoln–Lancaster County narcotics task force. In the first paragraph of his affidavit, Investigator Cronin detailed his extensive training and background with narcotics investigations. The remainder of his lengthy affidavit describes the investigation that led up to

2

the search of 1609 D Street, apartment No. 10.

Although we understand that the affidavit is extensive, we reprint much of the language contained within it in order to provide context to our analysis of Pittman's assertions regarding the sufficiency of that affidavit:

> On 2–23–12 Investigator Sorensen and your affiant were in the area of 11th/E and observed a vehicle driving in the area. Investigators followed this vehicle and observed it to stop at numerous locations that are all currently being investigated for the sale of narcotics. After this vehicle left these locations [the occupants of the vehicle] were observed to pick up a[n] unknown [male individual] and then travel directly to the alley parking lot of 1609 D. Street. At that time the ... driver [of the vehicle] and unknown [male] entered the rear of 1609 D. Street and left a few minutes later with the [unknown] male walking away and the [driver] returning to his car. Investigators continued to follow the car to 911 S. 11th Street w[h]ere [a passenger] exited the vehicle and was immediately contacted by Investigator Mayo. Investigator Mayo located .1 grams of crack cocaine on the ground where [the passenger] was contacted. During this same time Investigator Sorensen and your affiant continued to follow the vehicle and contacted it at 1100 W.C Street. As the vehicle parked [the driver] was contacted by your affiant. [The driver] was observed to cup his hand under his seat while Investigator Sorensen approached from the passenger side. [The driver] failed to respond to Investigators commands then drove his vehicle into our vehicle. He was then pulled out of his vehicle. Investigator Sorensen located .3 grams of crack cocaine directly where [the driver] had his hand placed in the vehicle.
>
> On 2–28–12 a concerned citizen contacted your affiant and stated that suspicious activity has been occurring at 1609 D. Street. ... They stated specifically that numerous individuals would arrive at the rear of 1609 D. Street and shout to a third story window for "Joe". An older [African American male] would then come down from the [southeast] corner third floor and allow the individuals into the complex. A short time later these individuals would leave. The concerned citizen stated this has occurred several times over the past few months. The majority of these contacts were in the evening hours.

3

On 3–6–12 Investigator Mayo and your affiant conducted surveillance at 1328 E. Street and observed 2 [unknown male individuals] leave and drive to the rear parking lot of 1609 D. Street. Both males entered the building and both left a few minutes later. They returned to 1328 E. Street where they were contacted by Investigator Mayo and your affiant as they parked their vehicle. Investigator Mayo contacted the passenger of the vehicle ... who was observed to shove his right hand between the seat and the door. Once [the passenger] opened the door Investigator Mayo observed in plain view a white rock (.2 grams) substance that pretested positive for cocaine. [The passenger] stated that he was taken to "Joe [']s" apartment near [16th and D Street].

On 3–7–12 Investigator Mayo and Investigator Schmidt conducted surveillance at 1609 D. Street. At approx. 2008hrs both Investigators observed a Saturn vehicle ... registered to [C.A.] arrive. [C.A.] exited her car and yelled to the SE/third story apartment. [An African American male] who Investigator Mayo [identified] as Joe Fitzgerald exited apt # 10 and let [C.A.] in and she left two minutes later. Information from court records showed [C.A.] was indicted on cocaine charges in 2005. Investigator Mayo then observed [an unknown male individual] arrive on a bike, yell up for "Joe", and thr[o]w rocks at the SE/third story apartment window. Joe Fitzgerald exited his apartment # 10 and came downstairs to the door. Fitzgerald let the [man] into the threshold of the building and Investigator Mayo observed a hand to hand deal between the two parties. The unknown [male] then left on his bike. A short time later 2 [other unknown males] walked up to the rear of 1609 D. Street and whistled up towards Joe Fitzgerald's apartment. Fitzgerald exited his apartment and let both parties into the complex and into his apartment. At 2056hrs a second [male individual] on a bike arrived and threw rocks at Joe Fitzgerald's apartment. An unknown [African American male] exited apartment # 10 and let [the person on the bike] into the apartment. This party stayed for approx. 3 minutes and left.

On 3–20–12 Investigator Mayo conducted surveillance at 1609 D. Street and from 2000hrs to 2110hrs Investigator Mayo observed 10 individuals arrive either on foot or in a vehicle. Investigator Mayo observed Joe Fitzgerald come down to the rear entry door to 1609 D. Street and let all these individuals in. These individuals stayed for a couple of minutes

4

each and then left the apartment. Investigator Mayo [identified one of the individuals as a person who] has contacts with narcotics and [who] was cited for deliver[y] of [a] controlled substance in 2006.

At the end of his affidavit, Investigator Cronin stated his belief that the investigation of 1609 D Street, apartment No. 10, had yielded facts which constituted probable cause to search the apartment, as well as all of the individuals located within the apartment. The county court issued the search warrant.

*Id.* at *2-3.

After losing the direct appeal, Pittman then brought a post-conviction action under Nebraska law. However, that action was denied and dismissed by the district court without an evidentiary hearing. Pittman appealed assigning only one claim of error[1].

On appeal he asserted that the district court erred in failing to hold an evidentiary hearing regarding his assertion that trial counsel and appellate counsel were ineffective regarding various aspects of the search warrant affidavit. More specifically, Pittman argued that trial and appellate counsel (who were one and the same) should have better attacked the search warrant affidavit. He argued the affidavit was insufficient because: (1) the affidavit lacked a showing of probable cause to execute the search warrant at night; and (2) the affidavit generally lacked a showing of probable cause.

The Nebraska Court of Appeals in a fully reasoned decision rejected his appeal in an opinion that is not available on Westlaw. *State v. Pittman*, No. A-14-605 (Neb. Ct. App. March 12, 2015) (the opinion may be found at filing no. 11-5 at CM/ECF pp. 58-69.) Pittman's request for further review was also denied by the Nebraska Supreme Court. (Filing no. 12-5 at CM/ECF p. 4.)

---

[1]He abandoned all his other claims.

The federal habeas petition, alleging eight claims, was filed on September 14, 2015 (filing no. 1.) The petition was timely filed.

## *ANALYSIS*

This case is easily resolvable. I will set forth the applicable law and then briefly apply that law to the eight claims Pittman asserts.

### **The Doctrine of <u>Stone v. Powell</u>**

As the Eighth Circuit Court of Appeals, in an en banc decision, has said:

> [A] Fourth Amendment claim is *Stone*-barred, and thus unreviewable by a federal habeas court, unless either the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system. We believe that our approach flows naturally from the language of *Stone*, which we have emphasized in this opinion, and from *Stone's* rationale. As *Stone* makes clear, Fourth Amendment claims asserted by state prisoners in federal habeas petitions are to be treated differently from other constitutional claims because of the nature and purpose of the exclusionary rule and the incremental value gained from its implementation in the federal habeas situation compared with the costs it imposes upon the administration of justice. The federal courts on habeas review of such claims are not to consider whether full and fair litigation of the claims in fact occurred in the state courts, but only whether the state provided an opportunity for such litigation.

*Willett v. Lockhart*, 37 F.3d 1265, 1273 (8th Cir. 1994) (applying *Stone v. Powell*, 428 U.S. 465, 482, 494 (1976)).

Claim One (the affiant made material misrepresentations and omissions in the affidavit in support of the search warrant), Claim Two (the affiant omitted material information in the affidavit to the issuing judge to obtain the search warrant), Claim

Three (the affidavit for the search warrant included a false statement made by the affiant or was done with a reckless disregard for the truth and rendered the affidavit misleading), and Claim Four (the District Court erred in denying Petitioner's Motion to Suppress the evidence obtained from 1609 D. Street, Apt #10 pursuant to the March 20, 2012 search warrant) are barred by the *Stone v. Powell* doctrine because Nebraska provided a full and fair opportunity for Pittman to litigate his Fourth Amendment claims before the Nebraska trial court and the Nebraska Court of Appeals.

### *Deference Under 28 U.S.C. § 2254(d)*

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner

7

"rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.*

Even if *Stone v. Powell* did not present a bar, giving the Nebraska courts the deference that they are due, claims one through four must be denied. The Nebraska Court of Appeals issued two detailed and reasoned decisions thoroughly exploring the Fourth Amendment issues. There is no basis for rejecting the deference that is due those fully reasoned opinions.

### *The Especially Deferential Strickland Standard*

When, as in Claims Five through Seven (asserting that trial and appellate counsel were ineffective for failing to attack the warrant because it allowed execution at night; asserting that trial and appellate counsel were ineffective because counsel failed to argue that the affidavit failed to establish probable cause; and asserting that the Court of Appeals "erred" when finding that there was no ineffective assistance of counsel), a petitioner asserts an ineffective assistance of counsel claim the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984) must be applied.

*Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id.* at 687-88. In conducting such a review, the courts "indulge a strong

8

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The second prong requires the petitioner to demonstrate"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a later habeas corpus action. *Id.* at 690.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with special vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111 (2009). In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and "leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome. As stated in *Knowles*:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard as incorrect but whether that determination was unreasonable–a substantially higher threshold. . . . And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id.* at 123 (internal quotation marks and citations omitted).

Essentially, the Nebraska Court of Appeals in the post-conviction opinion concluded that counsel could not have been ineffective because the warrant and subsequent search were bullet proof despite the best efforts of counsel in the trial court and on direct appeal. Pittman has wholly failed to show that the fully reasoned opinion of the Nebraska Court of Appeals is not entitled to deference on the claims of ineffective assistance of counsel. He merely seeks a second bite of the "ineffective assistance of counsel apple." A federal court does not have the power to accord him that opportunity.

### *Only Constitutional Claims Are Cognizable In A Federal Habeas Case*

In Claim Eight, Pittman asserts that: "The Nebraska Court of Appeals erred in concluding that the District Court did not err in denying Petitioner's motion for post-conviction relief without a evidentiary hearing." But as my former boss, Judge Donald R. Ross, wrote for the Court of Appeals, the failure of a state post-conviction court to hold an evidentiary hearing does not allege a violation of a Constitutional right, as required for federal habeas corpus relief. *Smith v. Lockhart*, 882 F.2d 331, 334 (8th Cir. 1989). In any event, here there was no need for a hearing. Since the record contained all the facts necessary to resolve the ineffective assistance of counsel claim, Pittman was accorded all the process he was due.

### *Certificate of Appealability*

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for granting certificates of appealability (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). I have applied the appropriate standard and determined Pittman is not entitled to a certificate of appealability.

IT IS ORDERED that this case is dismissed with prejudice and I will not issue a certificate of appealability. I will enter judgment by a separate document.

March 21, 2016.               BY THE COURT

                              s/ *Richard G. Kopf*
                              Senior United States District Judge